Filed 2/9/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Reyna R. et al., Persons Coming Under the Juvenile Court Law. | B338698 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>Cesar R.,<br><br>    Defendant and Appellant. | (Los Angeles County Super. Ct. No. 21CCJP00901E–H) |

    APPEAL from orders of the Superior Court of Los Angeles County.  Lucia J. Murillo, Commissioner.  Affirmed in part, reversed in part, and remanded with directions.

    Ernesto Paz Rey, under appointment by the Court of Appeal, for Defendant and Appellant.

    No appearance for Plaintiff and Respondent.

_____

## INTRODUCTION

Cesar R. (Father) appeals from the juvenile court's orders at a six-month review hearing, terminating dependency jurisdiction over his four minor children, granting sole legal and physical custody to their mother, B.C. (Mother), and ordering monitored visits for Father. On appeal, Father argues the juvenile court erred in ordering that his visits be monitored by a professional monitor at his expense because his inability to pay for a monitor effectively precludes him from having any visitation with his children. Given that Father raised a timely objection on these grounds at the review hearing, we conclude the juvenile court erred in ordering Father to pay for a professional visitation monitor without first considering whether Father lacked the ability to pay or whether there were any reasonable alternatives that would allow for monitored visitation with the children. We accordingly reverse the portion of the custody order requiring a professional visitation monitor paid for by Father and remand for further proceedings consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Child welfare history

Father and Mother are the parents of four children: Reyna R. (born 2010), Matthew C. (born 2014), Raquel C. (born 2016), and Rebecca C. (born 2021). In 2021, the juvenile court asserted dependency jurisdiction over the children based on Father's alcohol abuse and Mother's failure to protect the children from the alcohol abuse. In February 2022, the court terminated jurisdiction over the children with a custody order that granted sole physical custody to Mother, joint legal custody to both parents, and monitored visitation to Father. The order required that Father's visits be monitored by a mutually agreed-upon

2

monitor or a professional monitor paid for by Father. However, Mother and Father later signed a stipulation to modify the custody order by removing the restrictions on Father's visitation and granting joint legal and physical custody to both parents so that they could resume living together. The stipulation and modified custody order were approved by the family court in July 2022.

## 2. Current dependency petition

In August 2023, the Los Angeles County Department of Children and Family Services (DCFS) received a referral alleging an incident of domestic violence between the parents. On that occasion, Mother suspected Father was drunk and refused to allow him inside the home. As Mother argued with Father through a window, he slapped her on her cheek. The oldest child, Reyna, witnessed the incident and called the police. Father was arrested, but returned to the family's home a few days later.

In an interview with DCFS, Mother was asked about the prior dependency case involving Father's alcohol abuse. Mother stated that, after that case was closed, she allowed Father to move back into the home because he showed her a court document that authorized him to do so. Since Mother could not read or write, Reyna reviewed the document for her and confirmed that it allowed Father to return to the home. Although Mother reported that the August 2023 incident was the first time Father hit her, DCFS's investigation revealed that there had been multiple domestic violence calls to the police regarding Father within the past year.

3

On September 20, 2023, DCFS filed a dependency petition for the children under Welfare and Institutions Code[1] section 300, subdivisions (a) and (b).  As later amended, the petition alleged the children were at substantial risk of harm based on Father's domestic violence and alcohol abuse, and Mother's failure to protect the children from Father's conduct.  At a detention hearing on October 5, 2023, the juvenile court detained the children from Father and released them to Mother pending adjudication of the petition.  The court also granted Father monitored visitation with the children.

### 3.    Jurisdictional and dispositional hearing

For its jurisdiction/disposition report, DCFS conducted interviews with the family about the allegations in the petition.  In their respective interviews, both Mother and Reyna confirmed that Father struck Mother in the face with his hand when she refused to allow him in the home.  Mother stated that she did not know if Father was intoxicated at the time, but she suspected he was attempting to bring alcohol into the home.  Mother did not permit Father to drink alcohol inside the home since the prior dependency case, and she had not seen Father drink in the presence of the children for over a year.  In his interview, Father indicated that he hit Mother by accident during an argument.  He admitted he drank a few beers prior to going home that night, but denied he was intoxicated.  Although Father regularly drank beer after work outside the home, neither he nor Mother believed that Father had an alcohol problem.

---

[1]     Unless otherwise stated, all further undesignated statutory references are to the Welfare and Institutions Code.

In its report, DCFS noted Mother was a homemaker and Father worked as a gardener at the Rose Bowl. Although Father was not currently residing in the family's home, he continued to pay the rent and utilities, which totaled about $750 per month. The family also received $650 in monthly food assistance. Father had not made himself available for visits with the children, and DCFS was concerned that Mother might be allowing him to have unmonitored visits in the home. DCFS recommended the court sustain the petition and grant services to both parents.

On November 27, 2023, the juvenile court held a combined jurisdictional and dispositional hearing. The court dismissed the count in the petition alleged under section 300, subdivision (a), and the failure-to-protect allegations against Mother. The court sustained the remaining counts in the petition, as amended by interlineation, based on Father's domestic violence and alcohol abuse. Turning to disposition, the court declared the children dependents of the court under section 300, subdivision (b), removed them from Father, and ordered that they remain released to Mother under supervision of DCFS. The court granted family preservation services to Mother and enhancement services to Father. Father's case plan included a full drug and alcohol program with weekly on-demand testing, individual counseling, and monitored visitation with the children three times per week.

**4. Six-month review hearing**

In a May 2024 status review report, DCFS stated that Mother was complying with her court-ordered services, and that the children were doing well in her care. Father completed an outpatient substance abuse program, was testing negative for drugs and alcohol on a consistent basis, and was on the waiting

5

list for individual counseling.  However, DCFS reported that Father continued to struggle with the same issues that gave rise to the current dependency case.  In March 2024, Father left two voicemail messages on Reyna's phone in which he cursed at the child, called her a "bitch," and made threats to burn down the family's home and to cut off all financial support.  During both calls, Father seemed to be intoxicated.  Father also appeared to be under the influence of alcohol when Mother and the case social worker called him together.  On two other occasions, Father followed Mother as she was walking to the children's school and a bus stop, and became physically aggressive with her.  During one incident, Father grabbed Mother by the arms, shook her, and threatened to throw her in his truck until bystanders intervened. In April 2024, Mother obtained a three-year domestic violence restraining order that prohibited Father from having contact with either her or the children except for court-ordered visits with the children.

In its report, DCFS noted that prior to the restraining order, Father attended monitored visitation with the children. The visits were monitored by the case social worker, took place at a restaurant, and lasted about two hours on the weekend.  While the two younger children were excited to see Father, Reyna and Matthew were observed to be distant.  The children also expressed to DCFS that they were uncomfortable visiting Father due to his past alcohol abuse and domestic violence against Mother.  While Father was appropriate during these monitored visits, he did not attend any further visits with the children or maintain contact with DCFS after the restraining order was issued.  DCFS recommended the court terminate jurisdiction with a family law order granting sole legal and physical custody

to Mother and monitored visitation to Father. DCFS also recommended that Mother not serve as the monitor for Father's visits with the children, and that the visits take place outside Mother's home.

On May 28, 2024, the juvenile court held the six-month review hearing. DCFS submitted on its request that the court terminate jurisdiction with an order granting sole custody to Mother and monitored visitation to Father. Both Father's counsel and Mother's counsel agreed that jurisdiction should be terminated, but asked that Father's visitation be unmonitored. The children's counsel requested the court make a detriment finding and deny Father any visitation. The children's counsel noted that Father previously made Mother sign a document allowing him to move back into the family's home, and argued that Father might use visitation with the children "to go around court orders and have unmonitored contact with the mother."

After hearing the argument of counsel, the juvenile court ordered jurisdiction terminated over each of the children pending the receipt of a custody order that granted sole legal and physical custody to Mother and monitored visitation to Father a minimum of once a month for three hours. The court also ordered that Father's visits with the children be monitored by a professional monitor to be paid for by Father. In denying Father's request for unmonitored visitation, the court noted that Father had not been able to maintain his sobriety since completing a substance abuse program, as evidenced by the recent incidents where Father engaged in aggressive and threatening conduct while under the influence of alcohol.

Immediately after the court issued its ruling, Father's counsel objected to the requirement for a professional monitor.

His counsel argued that "[d]ue to limited finances, essentially making that order is a no visits order." The court overruled the objection, stating: "Father's recent behaviors left the court no alternative but to grant monitored visits with a professional monitor, paid for by Father. [¶] Mother has done everything she's been asked. It would be unfair to ask her to be responsible for paying for a monitor, making sure Father is doing what he needs. Mother is not required to do anything of that sort."

On May 29, 2024, the juvenile court signed the custody order and terminated jurisdiction over the children. The custody order provided that Father's visitation with the children was to be "monitored by a professional monitor paid for by Father."

Father filed a timely notice of appeal.

## DISCUSSION

On appeal, Father challenges the portion of the custody order requiring that his visits with the children be monitored by a paid professional monitor at his expense. Father contends that because he cannot afford the cost of a professional monitor, the order renders his right to visitation with the children illusory. DCFS takes no position in this appeal. Under the circumstances here, we conclude the juvenile court erred in ordering Father to pay for a professional visitation monitor without first considering whether Father lacked the ability to pay or whether there were any reasonable alternatives to a professional monitor paid for by Father that would allow him to have monitored visitation with the children.

1. **Governing law**

When terminating jurisdiction over a dependent child, section 362.4 authorizes the juvenile court to issue "an order determining the custody of, or visitation with, the child." (*Id.*,

8

subd. (a).)  Section 362.4 further provides that the order "shall continue until modified or terminated by a subsequent order of the superior court," and directs that the order be filed in a pending family court proceeding (*id.*, subd. (b)) or, if there is none, as part of a new family court file (*id.*, subd. (c)).  When the juvenile court issues a custody or visitation order under section 362.4, "[t]he order shall not be modified" in a family court proceeding "unless the court finds that there has been a significant change of circumstances since the juvenile court issued the order and modification of the order is in the best interests of the child."  (§ 302, subd. (d).)

In making a custody or visitation order under section 362.4 (commonly referred to as an "exit order"), the court's " 'focus and primary consideration must always be the best interests of the child.' "  (*In re T.S.* (2020) 52 Cal.App.5th 503, 513.)  The juvenile court is not restrained by any preferences or presumptions that ordinarily apply in family court.  (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268.)  We review a juvenile court's exit order for abuse of discretion.  (*In re M.R.* (2017) 7 Cal.App.5th 886, 902.)

**2.    The juvenile court erred in ordering Father to pay for a professional visitation monitor without first considering his ability to pay or any reasonable alternatives**

In terminating jurisdiction over the children and granting Father monitored visitation, the juvenile court ordered that the visits be supervised by a professional monitor paid for by Father. When Father's counsel objected to that order based on Father's "limited finances," the court did not conduct any inquiry into whether Father had the ability to pay for a professional monitor.

9

Nor did the court consider whether an unpaid monitor, such as a relative, that was approved by Mother and/or DCFS might be a reasonable alternative to a professional monitor paid for by Father. Instead, the court decided that because Father's recent conduct necessitated a professional monitor for his visits with the children, "[i]t would be unfair to ask [Mother] to be responsible for paying for a monitor." While we agree that Mother should not be required to share the cost of a professional visitation monitor, we conclude the juvenile court abused its discretion in failing to conduct any inquiry into Father's ability to pay or reasonable alternatives to a paid professional monitor once Father raised a timely objection.

At the six-month review hearing where the juvenile court issued its exit order, none of the parties requested that Father's visitation with the children be supervised by a paid professional monitor. DCFS submitted on the recommendation in its report that Father's visits be monitored by someone other than Mother and take place outside Mother's home. While both Father and Mother requested that the visits be unmonitored, the children's counsel asked the court to order no visitation for Father. The first time that the issue of a professional visitation monitor was raised was when the court announced its ruling granting sole legal and physical custody of the children to Mother, and ordering that Father's visits be "monitored by a professional, paid for by Father." In response to that ruling, Father's counsel immediately objected, arguing that "[d]ue to limited finances, essentially making that order is a no visits order." However, the trial court did not make any inquiry into Father's objection. Moreover, there was at least some evidence in the record that Father might not be able to afford this expense. While Father worked as a

10

gardener, he was the sole source of income for Mother and their four children, and the family also qualified for monthly food assistance.

In addition, in overruling Father's objection, the juvenile court did not consider whether there were any reasonable alternatives to a paid professional monitor if Father lacked the ability to pay. Instead, it appears the only other option that the court considered was whether the cost of a professional monitor should be shared by both parents, and concluded that Mother should not be responsible for this cost. We agree with the juvenile court that it was not reasonable to require Mother to pay any portion of the fees charged by a professional monitor for Father's visits with the children. Mother was a nonoffending party in this case and a victim of Father's domestic violence. She was also a homemaker and financially dependent on Father to support her and the children. However, requiring Mother to share the cost of a professional monitor was not the only alternative to consider.

Given Father's timely objection, the juvenile court should have considered whether an unpaid monitor approved by DCFS and/or Mother might be a reasonable alternative to a professional monitor paid for by Father. Alternatively, the court could have first considered whether Father had the ability to pay for a professional monitor, and if it found that he did not, the court then could have addressed what reasonable alternatives to a paid professional monitor might be available in this case. While the record contains limited information about Father's prior visits with the children, DCFS reported that he was appropriate during the visits monitored by the case social worker. Although DCFS would not have any involvement in visitation after jurisdiction

11

was terminated, the agency could have potentially identified an unpaid monitor for the juvenile court's consideration. This person or persons could even be identified by name in the exit order. Given Father's past conduct in manipulating Mother to allow him to return home and have unmonitored contact with the children, the court ultimately could decide that Mother should not be involved in approving a monitor for Father's visits. The court also could decide that there are no unpaid monitors that are appropriate and available to monitor Father's visits under the circumstances of this case. We express no opinion on what, if any, alternatives to a paid professional monitor might be reasonable if Father lacks the ability to pay. In some cases, the juvenile court could find that there are no reasonable alternatives available, and that the cost of a professional monitor must be borne by the parent as a condition for having monitored visitation. However, these are matters that should be determined by the juvenile court in the first instance.

Accordingly, we reverse the portion of the custody exit order requiring Father to pay for a professional monitor for his visitation with the children, and remand the case to the juvenile court to hold a hearing on whether Father lacks the ability to pay for a professional visitation monitor or whether there are any reasonable alternatives, such as unpaid monitor approved by Mother and/or DCFS, that would allow Father to have monitored visitation with the children.

**DISPOSITION**

The portion of the May 29, 2024 custody order requiring that Father's visitation be monitored by a professional monitor paid for by Father is reversed, and the matter is remanded for the juvenile court to conduct a hearing on Father's ability to pay for a professional monitor or reasonable alternatives to a paid professional monitor for Father's visitation with the children. In all other respects, the custody order is affirmed.

VIRAMONTES, J.

WE CONCUR:

STRATTON, P. J.

WILEY, J.

13